### AMERICAN EXPRESS CO. v. SWEENEY et al.

(District Court, D. Massachusetts. August 18, 1922.)

No. 903.

1. **Carriers ⬁35—Entitled to recover balance due from consignee, who paid erroneous rate.**

Where strawberries were consigned from Troy, Kan., to Boston, Mass., and due to an error of the agent of the express company consignee paid less than the legal rate between these two points, the express company was entitled to recover the balance of the legal rate between these two points.

2. **Carriers ⬁188—Consignee, relying on representations of carrier's agent as to facts, not required to pay additional charges.**

Where a car of strawberries consigned to Denver, Colo., was delivered to an express company at Troy, Kan., and while in transit shipper reconsigned the strawberries to Boston, Mass., and an agent of the express company issued a second receipt, merely showing receipt of strawberries at Troy for shipment to Boston, and this receipt was attached to a draft, the Boston consignee, taking up the draft, was liable only for transportation charges between Troy and Boston, as express company could not profit by their agent's misstatement of fact at the expense of innocent parties.

At Law. Action by the American Express Company against Daniel P. Sweeney and others. Judgment for plaintiff.

⬁For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

Pinkham, Chittenden & West, of Boston, Mass., for plaintiff.
John P. Feeney and George F. McKelleget, both of Boston, Mass., for defendants.

MORTON, District Judge. This is an action to recover the balance of express charges on a car of strawberries. The facts are as follows: The Fruit Growers' Association arranged with the Express Company at Troy, Kan., to ship a car of strawberries to Denver, Colo. The car in question was iced and sent to Troy, where it was duly loaded. It was started towards Denver. While it was en route the Fruit Growers' Association sold the strawberries to the defendant in Boston, and thereupon arranged with the Express Company to divert the car at Topeka, Kan., and send it to Boston, instead of to Denver, which was accordingly done. At that time the Express Company's representative at Troy gave a second receipt for the car to the Fruit Growers' Association, showing receipt of the goods at Troy for shipment in the car to Boston. This receipt was attached to a draft on the defendants for the price of the strawberries and sent on by the Fruit Growers' Association. The defendants in Boston took up the draft, received the car of berries, and paid the plaintiff's charges, as then made.

[1] The plaintiff contends that these charges were less than it was entitled to and was by law required to collect, being erroneously figured by its representatives in Boston, and it now seeks to recover the difference. The first alleged error in the charge made consisted in figuring a commodity rate on the shipment, whereas in fact, it is claimed, no commodity rate between Troy or Topeka and Boston was then in force and the regular classification should have been followed. The second error alleged to have been made was in charging for transportation from Troy to Boston direct; the plaintiff contending that the charge should have included the move from Troy to Topeka and from Topeka to Boston. The defendants acted in entire good faith, and paid at the time when they received the carload of berries what were supposed to be the full and proper legal charges.

The second receipt issued by the plaintiff's agent for the shipment was untrue, as he and the representative of the Fruit Growers' Association, at whose request he acted, both knew. The strawberries were not then at Troy, and many hours would be required to get them back there, or to some equivalent point, for shipment East.

My attention has been called to no commodity rate applicable to this shipment in the schedules in force at that time. The shipment appears to have come within the second class and to have taken that rate. Of course, the plaintiff had no right to charge less than the legal rate; and the defendants, receiving the shipment, were bound to pay that rate. Louisville & Nashville R. R. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665. It follows that the defendants are liable for the difference.

[2] As to the distance on which the charge should be figured: As I have just said, the defendants equally with the plaintiff were bound

to know the law, and to pay what appeared on the face of the papers to be the legal charges. But when, by the fraud of the plaintiff's agent, false shipping receipts are issued, which come into the hands of innocent persons, by whom they are accepted and acted upon, a different question is presented. In my opinion the plaintiff is bound by such statements of facts made by its agent acting within the general powers conferred upon him with respect to the plaintiff's business. It does not appear that the agent issued the false receipt for his own benefit, or otherwise than on the business of the plaintiff, although he acted in violation of his instructions and of the law and regulations. I do not think that the transportation statutes and regulations made under them ought to be so construed as to enable carriers to profit by the fraud of their agents at the expense of innocent parties.